IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Anthony Lee Lamboy, ) | C/A No. 0:10-2407-TLW-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER AND** |
| Spartanburg County Detention Facility ) | **REPORT AND RECOMMENDATION** |
| Medical; Larry Powers, Warden; Captain ) | |
| Teresa Speller; L.T. Pilgrim; Cpl Church, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

The plaintiff, Anthony Lee Lamboy ("Lamboy"), filed this matter seeking relief pursuant to 42 U.S.C. § 1983. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motion for summary judgment.[1] (Mot. for Summ. J., Attachments, and Supplement, ECF Nos. 29, 30, 31, 32, & 45.) By orders of this court filed pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the dismissal and summary judgment procedures and the possible consequences if he failed to respond adequately. (ECF Nos. 33 & 47.) Lamboy filed a response in opposition to the defendants' motion (ECF No. 81), and the defendants replied (ECF No. 82). Having carefully considered the parties' submissions and the applicable law, the court finds that the defendants' motion should be granted.

---

[1] Also pending before the court is Lamboy's motion to compel. (ECF No. 69.) In his motion, Lamboy alleges that he has not received discovery responses from the defendants; however, the defendants provide proof of service that responses to Lamboy's discovery requests were mailed to Lamboy's address of record as of the date of service as well as the updated address provided to the court by Lamboy as of the date of his motion. (See ECF Nos. 67 & 74-1.) It appearing that the defendants have provided the discovery responses sought, Lamboy's motion is denied.

**BACKGROUND**

Lamboy's Amended Complaint alleges that the defendants were deliberately indifferent to his medical needs while Lamboy was detained at the Spartanburg County Detention Facility ("SCDF"). Lamboy alleges that he entered the jail after he sustained two broken legs from a car accident. Lamboy alleges that the defendants failed to adequately address his pain from these injuries and provide him with appropriate treatment. Lamboy contends that he was not provided with a medically appropriate sleeping situation. Lamboy further alleges that he repeatedly requested a thicker mattress and a different bed or housing classification and that his requests were ignored. (See generally Am. Compl., ECF No. 38.)

**DISCUSSION**

**A.     Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over



facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Deliberate Indifference—Medical Treatment**

The standard for reviewing medical claims of pretrial detainees under the Fourteenth Amendment is essentially the same as that for a convicted prisoner under the Eighth Amendment—deliberate indifference to serious medical needs. Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992); Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). Not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the [Constitution]." Estelle, 429 U.S. at 105. A prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to an detainee and disregards that substantial risk. Farmer v. Brennan, 511 U.S. 825, 847 (1994); see also

Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004). The government is required to provide medical care for incarcerated individuals. Estelle, 429 U.S. at 102. However, to establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. See Estelle, 429 U.S. at 106. Further, while the Constitution requires a prison to provide detainees with medical care, it does not demand that a prisoner receive the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). "[A detainee's] mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citation omitted); Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment."); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Lamboy has failed to provide any evidence that would implicate any of the defendants for medical indifference. Lamboy first alleges that the defendants "exhibited gross negligence" related to his medical problems which caused him "great pain to body and mind." (Am. Compl., ECF No. 38 at 1.) Lamboy additionally states that he "got no hand of assistance from this facility as way of pain meds." (ECF. No. 38-1 at 3.) Lamboy supports the gross negligence allegation by asserting that the defendants did not act upon his requests for medical treatment or his two grievances filed regarding his lack of medical treatment. (See Inmate Grievance Request Form, Ex. 7 to Powers Aff.,

ECF No. 31-2 at 6-11.)  In his first grievance, Lamboy complained that the officers did not let him stay under his bed covers throughout the day, (id. at 7), despite the fact that staying under the covers is against SCDF's policy.  (SCDF's Rules for the Guidance of Inmate's Behavior, Ex. 6 to Powers Aff., ECF No. 31-2 at 5.)  Lamboy claims that staying under the covers helps alleviate some of the pain in his legs.  Upon receipt of the grievance, Defendant Powers referred the grievance to his medical staff, who determined there was no medical reason to allow Lamboy to violate SCDF's bed policy.  (Powers Aff., ECF. No. 29-2 at 1.)  In the second grievance, Lamboy complained that his medical requests were being ignored.  (See Inmate Grievance Request Form, Ex. 7 to Powers Aff., ECF No. 31-2 at 7.)  However, the unrefuted evidence in the record indicates that Lamboy was prescribed pain medicine throughout his detention in SCDF.  (See Suppl. Mem. Supp. Mot. Summ. J., ECF No. 45 at 2; see generally Med. Records, Ex. 4, Part 1 to Powers Aff., ECF No. 30-1 at 11-18; Ex. 4, Part 2 to Powers Aff., ECF No. 30-2 at 19-21; Ex. 4, Part 3 to Powers Aff., ECF No. 31-1 at 1-22.)  Moreover, Lamboy continually received calcium supplements and Ensure drinks, as prescribed by Dr. Mark Visk of Orthopedic Specialities of Spartanburg, LLC, throughout his stay at SCDF.  (See generally, Med. Records, Ex. 3, Part 2 to Powers Aff., ECF No. 29-5 at 9-20; Ex. 4, Part 3 to Powers Aff., ECF No. 31-1 at 2-9.)

Lamboy also alleges that placing him in a cell, for sixteen months, where he had to sleep on the second bunk was "gross negligence" because getting up and down from the bunk could result in "damaged screws and rods [in his legs]."[2]  (Am. Compl., ECF No. 38 at 2.)  However, the defendants

---

[2] Lamboy also complains that his request for a special mattress was denied.  (Pl.'s Resp. Opp'n Mot. Summ. J., ECF No. 81-3 at 2.)  However, Defendant Church, the Classification Officer of SCDF, attests that he "never received any instructions from medical to change Lamboy's housing arrangements."  (Church Aff. ¶ 9, ECF No. 32-1 at 3.)



have presented evidence that Lamboy was first housed in the medical cell of SCDF. (See Church Aff. ¶ 4, ECF 32-1 at 2.) After Lamboy no longer needed his wheelchair, he was transferred out of the medical ward to Pod 5 on March 18, 2009. (See id. at ¶¶ 5-6.) Between March 18, 2009 and August 26, 2010, he was transferred to six different cells. (See id. at ¶¶ 6-8, ECF No. 32-1 at 2-3.) In each of the transfers between March 18, 2009 and August 26, 2010, Lamboy was either assigned to Bed 1 or Bed 2.[3] (Id.) When Lamboy was transferred to his final cell before being sent to the South Carolina Department of Corrections ("SCDC"), he was assigned to Bed 4.[4]

During the series of cell transfers, Lamboy was seen by Dr. Mark Visk, an Orthopedic Surgeon. (ECF No. 29-5 at 12.) Dr. Visk released Lamboy from his care on May 21, 2009, noting "[Lamboy] was doing well and x-rays look good." (Id. at 12.) Lamboy even admitted to Dr. Visk that he was "not quite back to normal but continuing to improve with fairly mild pain." (Id.) Thus, despite Lamboy's claims, the record shows that his legs actually improved between his first transfer and when he was released by Dr. Visk. Additionally, when Lamboy was transferred to SCDC from SCDF, his Medical Transfer Information Form did not indicate any leg injuries. (See Med. Records, Ex. 3, Part 1 to Powers Aff., ECF No. 29-4 at 3.) Thus, Lamboy's claim regarding medical indifference for failure to remedy his pain and requiring him to sleep on the second bunk fails because the record unequivocally shows that Lamboy was seen and treated by medical staff in a manner consistent with Lamboy's treating physician's instructions throughout his detention at SCDF.

---

[3] According to the unrefuted evidence presented by the defendants, Bed 1 is the lowest level bed. Bed 2 is the middle bunk which is "approximately three feet from the floor; an inmate does not have to climb into this bed, or jump down from it." (Church Aff. ¶ 7, ECF No. 32-1 at 2.)

[4] Bed 4 is a "cot and/or mattress and blankets on the floor." (Church Aff. ¶ 5, ECF No. 32-1 at 2.)



Lamboy also alleges that the defendants did not provide him physical therapy for his injuries which "could seriously keep [him] from receiving future jobs." (Am. Compl., ECF No. 38 at 2.) However, the record shows that when Lamboy was treated by Dr. Visk on January 23, 2009, Dr. Visk determined that "no PT [was] needed at this time." (Med. Records, Ex. 3, Part 4 to Powers Aff., ECF. No. 29-7 at 2.) Additionally, when Dr. Visk released Lamboy, he did not indicate that physical therapy was needed when he prescribed Lamboy's future treatment plan. (See Med. Records, Ex. 3, Part 2 to Powers Aff., ECF. No. 29-5 at 12.) Thus, Lamboy does not have a claim against the defendants merely because it appears he disagrees with his doctor's orders. See Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks & citation omitted) (alterations in original); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Moreover, the named defendants are non-medical personnel. For Lamboy to establish a claim for denial of medical care against non-medical personnel, he must show that the non-medical personnel failed to promptly provide needed medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990). Moreover, because most prison officials are not trained medical personnel, they are entitled to rely on the opinions, judgment, and expertise of medical personnel concerning the course of treatment which the medical personnel deemed necessary and appropriate for the prisoner. See id. In this case, Lamboy does not provide any evidence that the defendants failed to provide prompt medical care, deliberately interfered, or were indifferent

regarding his treatment. Thus, Lamboy's claim alleging deliberate indifference of his medical needs against the defendants, as non-medical personnel, fails.

## RECOMMENDATION

Accordingly, the court recommends that the defendants' motion for summary judgment be granted. (ECF No. 29.)

                                                                                 Paige J. Gossett
                                                                           UNITED STATES MAGISTRATE JUDGE

July 11, 2011
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).